## W. F. SHAMLEFFER v. COUNCIL GROVE PEERLESS MILL COMPANY.

1. WATERCOURSE; *Rights of Riparian Owner.* Every man through whose land a stream of water runs is entitled to the flow of that stream without diminution or alteration.

2. ———— The Council Grove Peerless Mill Company in 1874, with the assent of an upper riparian owner, dug a channel through the lands of such owner from a point on the Neosho river to its mill, and thereby diverted from its natural channel through the land now belonging to plaintiff in error a portion of said stream, and this without the assent of the then owner of said plaintiff in error's land. *Held*, That thereby the mill company acquired no right to continue said diversion, or to restrain plaintiff in error from removing any obstruction, natural or artificial, in the bed of said river on his lands.

3. ESTOPPEL OF MINOR; *Knowledge of Executor and Guardian, no Estoppel.* Where at the time of digging said channel the lands now belonging to plaintiff in error were the property of a minor, held by said minor under a will, and where no legal proceedings were had to acquire the right to the use of any portion of the stream, and no conveyance or

permission obtained from the executor of said will and guardian of said minor, the mere knowledge on the part of said executor and guardian that said company was engaged in digging said channel, and failure on his part to object to said work or to take measures to prevent it will work no estoppel upon the minor, or prevent said minor from afterward asserting her right to the flow of the entire stream in its natural channel.

4. FLOWAGE OF WATER; *Right of its Use, not an Easement, but Part of the Land itself.* The right to the use of the flow of water in its natural course is connected with and inherent in the property in the land, and passes by a conveyance of the land. Hence a deed of the land made by the executor and guardian, under orders of the probate court, conveyed to plaintiff in error the right to the flow of the entire stream in its natural channel, as before the digging of said artificial channel.

### *Error from Morris District Court.*

A PERPETUAL injunction was decreed in favor of the *Peerless Mill Company*, at the October Term 1875 of the district court. *Shamleffer* brings the case here on error. The opinion contains a full statement of the facts and proceedings.

*Sharp & Johnston*, and *John T. Bradley*, for plaintiff in error.

*M. B. Nicholson*, and *McClure & Humphrey*, for defendant in error.

The opinion of the court was delivered by

BREWER, J.: This was an action originally commenced in the district court of Morris county, on the 24th of March 1875, by defendant in error, The Council Grove Peerless Mill Company, filing its petition and application for an injunction against Shamleffer, plaintiff in error. As grounds for an injunction, the defendant alleged that it was a mill company duly organized under the corporation laws of Kansas, and that as such company, had been since April 27th 1874, the owner in fee simple of two acres of land in Morris county, a portion of which fronted on the Neosho river, upon which it had erected and was operating a flouring mill, which had cost said company the sum of $7,000. It was further

3—18 KAS.

alleged that said company for the purpose of acquiring a water-power for their mill had dug an artificial channel through their own lands and the lands of others from whom they had acquired the right, to a certain point on the Neosho river, and had thereby acquired a sufficient water-power to operate their mill successfully, which they had been doing until the interruption of the same by Shamleffer. It was further alleged that about 400 yards below the head of said artificial channel, previous to and at the time of the erection of said mill, there was a natural obstruction, or dam, in the Neosho river, formed of stone and gravel, which backed the water up and forced it through the head of said artificial channel, thus creating the water-power by which said mill was run and operated; and that the said Shamleffer, without any legal right or just cause, and with intent to stop the running of the mill, had removed, displaced and carried away the stones and gravel composing said natural obstruction or dam, whereby said mill was stopped, and plaintiff damaged in the sum of $1,000. Upon the filing of this petition, verified by affidavit, a temporary order was made at chambers, restraining Shamleffer from interfering with the rights and mill privileges of said company.

Afterward, on the 14th of April 1875, Shamleffer made an application for an injunction against said company to restrain it from cutting, widening or deepening the artificial channel or race-way referred to in the petition of the company, and to restrain it from diverting any of the water of the Neosho river through said artificial channel, alleging that he was the owner in fee simple of certain lands abutting on the Neosho river at the point where the head of said artificial channel had been cut into said river; that from the head of said channel, down to a point below where said natural obstruction was alleged to be, he was the owner of the lands on both sides of said river; that he had purchased all of said lands for the valuable mill privileges to be derived from their lying and fronting on said river, which is a private stream; and that he had, before the commencement of the action of the Peer-

less Mill Company, commenced proceedings under the mill-dam act to have a mill-site condemned, and to erect a dam above the head of said artificial channel for the purpose of running and operating a grist and flouring mill; that said company, by means of said artificial channel, was diverting the waters of the said river from its natural course, preventing it from flowing on and over his lands as it was wont to do, and asking that the said Peerless Mill Company be restrained from interfering with his riparian rights to the use and benefit of the waters of said river. Upon the filing of this sworn petition, a temporary order was made at chambers, restraining the Peerless Mill Company from widening or deepening its artificial channel, or diminishing the water of the Neosho river, or in any manner interfering with Shamleffer's rights, until a full hearing of the matter could be had at the next regular term of the district court.

When the cases came on regularly for hearing, it was agreed by the parties that both cases should be consolidated into one action, under the title of *W. F. Shamleffer v. The Council Grove Peerless Mill Company*, and that the petition theretofore filed by said company against Shamleffer, should be taken as their answer to Shamleffer's petition, and that issue should be joined without further pleadings. A jury was waived, and a trial was had to the court. All the evidence introduced at the trial is set forth in the record. No special findings of fact were asked by either party. Upon consideration of the premises, the district court found the facts, and gave judgment as follows:

"*First*, The court finds, that the said W. F. Shamleffer is not entitled to the injunction as prayed for in his petition; but the court finds that the said Council Grove Peerless Mill Company should be restrained and enjoined from deepening, widening or in any way changing the present condition of the channel by which the waters of the Neosho river are conducted through the slough to the mill of the said Council Grove Peerless Mill Company.

"*Second*, The court finds further, that prior to the commencement of these suits there did exist at a point about

half-a-mile, more or less, below the head of the race of the said Council Grove Peerless Mill Company, a natural obstruction, formed of stone, gravel and sand, and that said Shamleffer did at said point, prior to the commencement of said suits, unlawfully dig out and remove the sand, gravel and stone, and thereby lowered said natural obstruction twelve inches, and that the effect of so lowering said obstruction did interfere with the rights of said Mill Company to the use of the waters of the Neosho river it had acquired by the construction of its mill.

"*Third*, The court further finds that the said natural obstruction should be replaced in the same condition it was in prior to the removal of said stone, gravel and sand, by the said Shamleffer, as aforesaid.

"It is therefore ordered, adjudged and decreed by the court, that said Council Grove Peerless Mill Company, its agents, employés and servants, be restrained and enjoined from further lowering, widening, deepening, or in any manner changing the present channel leading through the slough, by which the waters of the Neosho river are conducted through said slough to the mill of said Mill Company where it now stands. It is further ordered, adjudged and decreed that the said W. F. Shamleffer, his agents, employés and servants, be enjoined and restrained from further interfering with, or in any way removing any stone, gravel, sand, earth or any other material which forms the obstruction by which the waters of the Neosho river are backed up and turned into the slough, and thereby conducted to the mill of said Council Grove Peerless Mill Company. And it is further ordered and decreed that the said Shamleffer, his agents, employés and servants, be enjoined and restrained from doing any unlawful act whatever that will in any way interfere with the rights of said Council Grove Peerless Mill Company to the use of the waters of the said Neosho river, as acquired by it before the commencement of these suits, and prior to the removal of said stone, gravel and sand as aforesaid. It is further ordered, adjudged and decreed that the natural obstruction, situated as aforesaid about half-a-mile, more or less, below the head of the race of the Council Grove Peerless Mill Company, be restored and replaced by the stone, gravel and sand lying adjacent and convenient thereto on the banks of the Neosho river, and on an island in said river near said obstruction, and that said sand, stone and gravel be so replaced as to raise said obstruction twelve inches from the lowest point of the present height

of said obstruction, and that said material be so placed and
spread in said river as to restore the obstruction as near as
practicable to the same condition it was in before the removal
of the same by the said Shamleffer, prior to the commence-
ment of these suits.   And it is further ordered, decreed and
adjudged that Isaac Hammond, the county surveyor of Mor-
ris county, is hereby appointed and empowered to superintend
and control the replacement and restoration of the stone,
gravel and sand in said river, for the purpose of carrying into
effect the decree of the court aforesaid, and that he is hereby
authorized to employ a sufficient number of men to perform
said work, under his orders and directions, and to report in
writing to this court his action in the premises, and the
amount of his services and expenditures incurred thereby.
And it is further ordered, adjudged and decreed that the
sheriff of said Morris county shall protect the said Isaac
Hammond, county surveyor as aforesaid, in the performance
of the duty assigned him by this decree of court, and the
sheriff is hereby ordered and required to call on a sufficient
force, if necessary, to aid and protect the said Hammond in
the execution of this order.   And it is further ordered, ad-
judged and decreed that the said Shamleffer, his agents, em-
ployés and servants, and all persons whomsoever, are hereby
restrained and enjoined from in any way interfering with,
hindering or delaying the said Hammond from carrying into
effect the duty assigned him as aforesaid."

To this judgment Shamleffer excepted.   A motion was
made for a new trial, which was overruled and excepted to.
The errors complained of by plaintiff practically resolve
themselves into but three propositions, to-wit: *First*, That the
court erred in admitting certain testimony in behalf of the
defendant, over plaintiff's objection.   *Second*, That the find-
ings of fact upon which said judgment is based, are contrary
to the evidence.   *Third*, That said judgment is contrary to
law.

So far as the first error is concerned, little need be said.
The only matter referred to in the brief is the admission of
the proceedings in the probate court which were the founda-
tion of Shamleffer's title.   As the findings and decree recog-
nize and are based upon the fact that Shamleffer had title, we
fail to see how he was prejudiced by the admission of this

testimony. As no brief has been filed by defendant in error, and no defects in the proceedings by which Shamleffer acquired title pointed out, and as the decree is practically based upon the assumption that Shamleffer had title, we have made no critical examination of those proceedings; and we shall assume that they were sufficient to vest title in Shamleffer.

As little need be said upon the second proposition of counsel. The only specific finding of fact which could in any manner prejudice Shamleffer, was the second, and this seems a mixture of fact and law. So far as the mere question of the existence of the natural obstruction is concerned, there was testimony on both sides; and upon such a question of fact, the finding of the court must be held conclusive.

There is therefore really but a single question to be considered, and that is, whether the facts as they appeared in the case sustain the judgment; and in reference to this, these 1. Rights of riparian owner. matters are undisputed: Shamleffer acquired his title in December 1874; the tract then acquired extended up and down the Neosho river for quite a distance; above and below the head of the artificial channel, it embraced both sides of the river; at that point it touched the river, the center of the channel being the boundary; by the digging of this artificial channel a portion of the stream was diverted; the portion diverted was taken from the river above the lower half of Shamleffer's land, carried through the channel to the Peerless Mill Company's Mill, and then returned to the river below all of Shamleffer's tract. In other words, the lower half of Shamleffer's land was by the action of the Peerless Mill Company deprived of so much of the flow of the water as passed through the artificial channel. No portion of this channel was on the Shamleffer tract, and the assent of the owners of the land through which it was dug was obtained by the company. The channel was dug in the summer of 1874, and prior to Shamleffer's acquiring title. No express consent to the diversion was at any time obtained from the owner of the Shamleffer tract. This tract had belonged to one Seth M. Hays, who died before the Mill Company com-

3. Estoppel;  menced its work, leaving one child, a minor, as
rights of
minor.      sole heir.  Shamleffer acquired his title by deed
from the executor of Hays and guardian of the minor.  No
right to the diversion was obtained by any legal proceedings,
or any conveyance or permission from the executor or guard-
ian.  Beyond this there was testimony tending to show that
the company applied to the executor for permission to build
a dam, and was refused; that it attempted some negotiations
with him for the purchase of all or a part of this tract, but
failed; and on the other hand that he knew of the digging
of the channel by the company, and made no objection.

Upon these facts these questions arise: Did the Mill Com-
pany have the right, by digging the channel, with the consent
of the owners of the land through which it was dug, and of
the owner of one bank of the river at the point where the
channel commenced, but without the consent of the lower
riparian owner, to divert a portion of the water from its nat-
ural channel, and return it to the river only below the lands
of the non-consenting and lower riparian owner?  If it had
no such right, did the knowledge of the executor and guard-
ian, that it was expending money and labor in digging the
channel, and his failure to object, work any estoppel upon the
infant owner of the premises deprived thereby of the flow
of a portion of the stream?  If not, did the conveyance of
the land carry with it to Shamleffer the rights to the entire
flow of the stream in its natural channel?  The first question
must be answered in the negative.  The Mill Company had
no right to divert any portion of the flow of the stream to
the detriment of any lower riparian owner.  A riparian owner
has the right to such benefits as will result from the uninter-
rupted flow of a stream of water through its natural channel.
The maxim of the common law was, *Aqua currit et debet cur-
rere ut currere solebat.*  As was said by Lord Ellenborough
in *Bealy v. Shaw*, 6 East, 206, "every man is entitled to a
stream of water flowing through his land, without diminution
or alteration."  In *Tillotson v. Smith*, 32 New Hamp. 90,
Bell, J., said: "Every owner of land situate upon a stream

has a right to the natural flow of the stream; a right to insist that the stream shall continue to run *ut currere solebat;* that it shall flow upon his land in the usual quantity, at its natural place, and at its usual height, and that it shall flow off his land upon the land of his neighbor below in its accustomed place and at its usual level. This right he has as an incident to the property in his land, and he cannot be deprived of it but by grant, actual or presumptive. Whenever, by reason of the interference of the owner above, the water is diverted from his land and made to run elsewhere, or the water of other streams naturally running elsewhere is turned upon his land, or the water of the natural stream is made to flow upon his land at a different place from its natural channel, or at a different level, or in an unnatural manner, * * * the owner of the land may maintain an action for such injury." See also *Ingraham v. Hutchinson,* 2 Conn. 584; *Parker v. Griswold,* 17 Conn. 288; *Evans v. Merriweather,* 3 Scam. (Ill.) 492; *Elliott v. Fitchburg Rld. Co.,* 10 Cush., 193; and generally, Angell on Watercourses, ch. 4, and cases cited in text and notes.

The second question must also be answered in the negative. The title to the property was in the heir, a minor. There is no pretense that she knew anything of the work, or any claim that her conduct worked any estoppel, if indeed the knowledge and silence of an infant can ever be construed into an estoppel. And as to the knowledge and silence of her executor and guardian, that certainly can work no estoppel as against her. The right to this stream of water is incident to and part of the realty. But a guardian can make no sale or conveyance of the realty, or any part thereof, without an order of the probate court. And as the will is not copied into the record, we cannot assume that the executor had any greater powers than those he actually exercised, and those were to sell and convey under orders of the court. If he cannot make a sale, or divest the minor of her interests without an order of the court, he cannot indirectly and by his silence accomplish the same result. The court protects the

minor's interests, and her rights in the realty cannot be destroyed without judicial sanction. More than that, it does not anywhere appear that there was any concealment, or any facts known to the executor and guardian not known to the company. Every one is presumed to know the law. The company knew that it could not divert any portion of the stream from its natural channel without the consent of the riparian owners prejudiced thereby. It knew that the minor was the owner of a tract from which the digging of the channel would divert a portion of the natural flow of the stream. It knew that the guardian of such minor could not dispose of his ward's interest in that land, or any part of it, without the order of the court. The case therefore lacks many of the essentials to an estoppel. (*Clark v. Coolidge*, 8 Kas. 189.)

The third question must be answered in the affirmative. As incident to part of the realty at the time of this conveyance, was the right to the entire flow of the Neosho river 4. Flowage of water: right to its use. through its natural channel " without diminution or alteration." This, with all other hereditaments, corporeal and incorporeal, passed with a conveyance of the land. "The right to the use of the flow of the water in its natural course, and to the momentum of its fall, on the land of the proprietor, is not what is called an easement, because it is inseparably connected with, and inherent in, the property in the land; it is a parcel of the inheritance, and passes with it." Angell on Watercourses, pp. 96, 97. In *Johnson v. Jordan*, 2 Met. 239, Chief Justice Shaw says of this right: "It is inseparably annexed to the soil, and passes with it, not as an easement, nor an appurtenance, but as a parcel. Use does not create it, and disuse cannot destroy or suspend it." See also *Tillotson v. Smith*, 32 New Hampshire, 90; 3 Kent Com., side page 402. It follows therefore, that the mill company having no rights as against Shamleffer to any portion of the stream of water, cannot be permitted to question his acts in reference thereto.

The judgment will be reversed, and the case remanded for

further proceedings in accordance with the views herein expressed.

VALENTINE, J., concurring.

HORTON, C. J., not sitting in the case.