Pinchback, Adx., v. Graves et al.

## PINCHBACK, ADX., V. GRAVES ET AL.

1. PRACTICE: *Defense of infant, how made: Disabilities removed.*
   A court should not permit an answer of an infant without guardian to be filed merely upon the statement in the answer that his disabilities have been removed by the probate court. The removal should be proved by the record of the probate court, and, if it is not, a decree against the infant upon such an answer will be reversed.

2. SAME: *Defense of an infant: Appointment and duty of guardian.*
   The defense of an infant must be made by his regular guardian, if he has one; or, if he has none, by one specially appointed *after* service upon the infant. No attorney nor party in the suit should be appointed, and the defense of the guardian must be not merely formal, but real and earnest; he should put in issue and require proof of every material allegation to the infant's prejudice, whether it be true or not, and make no concessions on his own knowledge.

APPEAL from *Lincoln* Circuit Court.
Hon. W. P. GRACE, Special Judge.

*L. A. Pindall* for appellants, L. A. and X. J. Pindall.

It was error to render a decree against a minor without appointing a guardian *ad litem*, or sufficient proof that his disabilities had been removed. *Gantt's Dig., sec. 1190, 4493; 39 Ark., 62; Ib., 106.*

*D. H. Rousseau* and *U. M. & G. B. Rose* for appellants, argue upon the merits.

*J. M. Cunningham* for appellee, argues upon the merits.

EAKIN, J. This is a bill by the children of Peyton R. Graves, deceased, as heirs and distributees, seeking to follow assets of his estate into lands which have been purchased by their mother's second husband, and to subject the lands to their payment.

It is alleged and shown by the pleadings and proof that Peyton R. Graves, about the beginning of the civil war, died seized of some personalty, including two slave men, a wagon and some oxen. He had no land, but was cultivating land of his wife, with negroes, some of which were her own; and upon which land he left a growing crop. His widow became his administratrix; and it is sufficiently clear that some debts were probated against the estate, which have never been paid. In a short time she married Edward C. Hydrick, who took possession of all effects in her hands, and assumed the care and protection of her children. Of this second marriage a son was born also, E. C. Hydrick, junior; who, after the death of his father, was made a party to this suit, together with the administrator of his father's estate. The administration on the estate of Graves was never revived nor settled. It is plain that none is necessary now. The creditors have rested nearly twenty years upon their probated claims and would not now be heard if they were claiming, which they

are not. No effects remain which if collected could be otherwise disposed of than by distribution amongst the complainants. The rights of all parties may be finally settled in chancery.

It is not a case of distributees endeavoring to represent the estate, to get in or get possession of outstanding effects or property adversely held. It is more in the nature of a claim for waste and conversion against the administrator himself, in which the aid of chancery is necessary to reach a fund to which the distributees are entitled.

All the active parties in the transaction are dead, and the widow also. The contest is between the complainants and those claiming the land through Hydrick. The principal and the determining questions are: First. Did Hydrick lay out any money or expend effects of Graves' estate in such manner as to make him a trustee for Graves' children; and, if so, are a portion of the defendants, the Pindalls, who hold the greater part of the land under a purchaser at execution sale against Hydrick, bound by the trust? With regard to Hydrick's heir, the second question can not arise, but as against the Pindalls he had a right to contest the validity of the execution sale.

The Chancellor upon hearing, in a very clearly expressed written opinion, setting forth its grounds, held both points in the affirmative, and decreed in favor of complainants for the original value of the property of Graves' estate, which he found had been used by Hydrick in the purchase of the lands, but, under the peculiar circumstances, allowed nothing for interest. It was further held that the lien of complainants was superior to the claim of the Pindalls. In the decree, however, it was ordered that certain portions of the land which Hydrick had conveyed to his wife,

and of which complainants had possession, should be first subjected to the lien.

From this decree both parties appealed.

The interests of the defendants are not identical. The Pindalls, the administrator of Hydrick, and his heir, E. C. Hydrick, have a common interest in denying the trust, but the community goes no further. The heir has an interest antagonistic to the Pindalls, inasmuch as their purchase of the judgment against his father, and the sale under it, diminishes his inheritance, and he has a right to contest it. The administrator of Hydrick, senior, is only concerned to prevent a personal judgment or decree against the estate for the value of the property, for which he will not be personally liable. It can not concern him very materially whether a trust be declared against the land or not, although it does concern the heir very seriously.

It is evident from the decree that whilst the Pindalls may by its operation still be protected from loss, and have their claim to hold the lands against the heir made *res judicata;* and whilst the administrator or his sureties can not be injured, the heir loses all.

He was but seventeen when he defended, and it is very important to consider whether he has had proper protection in the court, in the determination of the rights of the respective parties upon the merits. I am deeply impressed with the conviction that there has been, in the past, not only in this, but in other States, too great laxity in dealing with the interests of minors. This is common in the probate courts, and not sufficiently rare in courts of more extensive jurisdiction. 1.Practice Defense of infant,how made.

No guardian *ad litem* was appointed for this youth. He came in and simply adopted an answer which had been filed by an administrator *de bonis non,* denying nothing of

his own motion, evidently knowing nothing about the whole matter. He adds this:

*Disabilities removed by probate court.* "The defendant further states that at the —— term of the probate court of Lincoln County he had his disabilities of non-age removed, and was then and there declared to be competent to transact his own business, as will more fully appear by a copy of the record of said court in that behalf made, and herewith filed."

This answer is signed only by the attorney, and verified by no one. It is put in upon the ordinary leave granted in all cases to new parties, adults or others. No copy of any such record appears in the transcript. None was ever filed below. No entry shows that the court was satisfied that the infant was competent to act *sui juris*, or that the court ever looked into the matter at all. The cause proceeded as against an adult, with the result above announced.

If there had not been that clause in the answer, no one would question the fact that a gross error had been committed in allowing the rights of a boy of seventeen years to be settled upon his own submission to a vicarious defense, made by one having no connection with him by blood, nor personal interest in the subject matter. Of what effect, in law, can be the admission or statement of one not competent to make it? It made no issue. And may, from all that appears, have been prompted by those who had an interest in dispensing with a proper guardian *ad litem.* I do not mean to say there is any special reason to suspect this. I take it that in fact there has been some proceeding in some other court, by which the court and attorneys were all satisfied that the boy had been rendered competent to act *sui juris.* But we can not make bad precedents from confidence in the court and attorneys. No such proceedings appear, whilst it does appear that he was a mere

boy, had no guardian, and lost his inheritance in the contest. For between the Graves' and the Pindalls he will have nothing left.

*When* the probate court of Lincoln County did the thing, whether or not it had jurisdiction, by residence of the boy, at the time, and what specially it did, are not shown. No inquiry upon these points appears to have been made.

The business and juridical history of America is strawn with the wrecks of infants' fortunes. The courts and the relatives of infants are culpable in this, not the Legislature. The laws are wise and careful. The true spirit of them should be kept in view, and administered. Our statutes require not only service on an infant, but that his defense must be made by his guardian if he has one; or, if he has not, by one specially appointed. In making this appointment the court should take care that it be not done until after service on the infant, that he may be heard upon this point if he should desire it, and must take care, further, that no attorney nor party in the action be selected. No judgment should be rendered affecting the interests of an infant until after defense *by guardian*, and this defense should not be a mere perfunctory and formal one, but real and earnest. He should put in issue, and require proof of, every material allegation of a complaint prejudicial to the infant, whether it be true or not. He is not required to verify the answer, and can make no concessions on his own knowledge. He must put and keep the plaintiff at arm's length. *See Gantt's Digest, sections 4521, 4595, 4493, 4494, 4495, 4578.*

These are wise provisions, and they are so far imperative. I think too that a guardian *ad litem* fails in his full duty, and does not apprehend the true obligation which he voluntarily assumes, if he contents himself with simply putting in a general denial, as is commonly done, and then

2. Appointment of guardian *ad litem*, and his duty.

leaves the infant to the mercy of the rude stream of the ensuing contest. His interests, after issue, require protection as well as before. Proof may be required in his behalf; witnesses against him may require cross-examination. • Points on error must be duly saved. With regard to these matters the statutes are not mandatory, but the caution of the Legislature would fall far short of its design, and be nullified in its effect—would indeed be but empty pretense, if it be not further understood that the guardian *ad litem* should watch the interests of the infant throughout the litigation, and see to it that a vigorous and real defense throughout be made by attorney. It is a moral obligation of the imperfect sort, perhaps, which can not be enforced, but it is none the less in contemplation of law, which aims only to be as practical as possible.

Keeping this policy in view, we must consider the nature and effect of the statute relied upon in this case to support the proceedings. The general policy of the common law, and as we have seen, the statutes also, is to rigidly protect the minor against his own inexperience, immaturity of judgment, carelessness and improvidence. Legislatures have, in some cases, supposed that particular infants may be more trusted, and have relieved their incapacities. In other cases they have enabled courts to do so, upon proper showing, and this power was conferred by law, in 1869, upon probate as well as Circuit Courts. Of the policy of laws which put it in the power of the probate judges in their discretion, and without any prescribed safeguards, to beardless boys to make ducks and drakes of their patrimony, I have nothing to say. It belongs to the Legislature. But it is at least apparent that the operation of such statutes should not be extended beyond their plain expressions or obvious meaning, and that courts, before acting upon them in individual cases, should at

least be affirmatively advised in some proper way that the disabilities have been removed. I am very sure the honorable circuit judge in the present case was satisfied personally as to this, but that is not enough. He should have been *judicially* so, or else the precedent of affirming his action will lead to the most shocking abuses. The general rule with regard to incapacities of infants is against the presumption of their removal, and the rule that all things will be presumed to have been rightfully done by superior courts, does not apply on direct appeals, where the record shows affirmatively that an error has been committed. Appellate courts can not cast about for presumptions which contravene the ordinary presumptions of facts, in such cases, and affirm upon the ground that by some possibility, upon some imagined condition of things, the action might be right.

With regard to the law in question some difficult questions arise, not now necessary to determine, and upon which we indicate no opinion, reserving their consideration until a case may arise in which attorneys may specially argue the points. Principally this, whether probate courts, as reorganized under the Constitution of 1864, have that power at all.

Whether they have or not, there is nothing in this transcript to show that it has been done, and the bare allegation of the infant in his answer that it had, must pass for nothing. The showing should have preceded the answer. If he could not answer, nothing he could say in answer should be at all regarded. The case simply stands as that of an infant defending for himself.

I think the decree should be reversed, and the cause remanded, with directions to strike the answer of the infant from the files, and to appoint for him a guardian *ad litem*, as in ordinary cases. If in fact he has been properly

capacitated to answer *sui juris*, he should make that apparent to the court by evidence, before leave should be granted him to answer so, and the evidence should appear in the record and proceedings. It is, in short, a condition or *status* in contravention of the common law, and the general purport of the statute law, and must appear affirmatively, and wholly independently of the infant's own acts or admissions. The court must know it before it can hear the answer of the minor.

Reverse and remand for proceedings consistent with this opinion, and the principles and practice of equity.