## HARRIS v. WILCOX.

No. 9361—Opinion Filed Oct. 1, 1918.

(175 Pac. 352.)

**1. Guardian and Ward—Guardian's Sale—Purchaser's Diversion of Purchase Money—Right of Action.**

Where a purchaser of real estate at a guardian's sale diverts the proceeds of sale by paying the personal obligations of the guardian, a suit by the minor will lie to recover the purchase price of the land and to foreclose a vendor's lien.

**2. Same.**

It is the duty of a purchaser of real estate at a guardian's sale to pay the amount of the purchase price into the hands of the guardian according to the purport of the order of sale, and such payment cannot be made by the purchaser paying the personal obligations of the guardian and deducting the amount thereof from the purchase price.

(Syllabus by Springer, C.)

Error from District Court, Haskell County; W. H. Brown, Judge.

Action by Willey Harris against O. A. Wilcox. Judgment for defendant, motion for new trial overruled, and plaintiff brings error. Reversed and remanded, with directions to grant a new trial.

James L. Hale, for plaintiff in error.

Clark & Foster, for defendant in error.

Opinion by SPRINGER, C. The parties will be referred to as they appeared in the court below. The plaintiff instituted this action to recover from the defendant the sum of $1,050, it being alleged that the same was due on the purchase price of 80 acres of land, and to foreclose a vendor's lien.

In the petition it is substantially alleged that under and by virtue of an order of sale issued out of the county court of Haskell county, on the 7th day of September, 1912, the plaintiff, as guardian, sold to the defendant 80 acres of land belonging to the ward, and that the order of sale was confirmed on the 18th day of October, 1912, and the deed issued on the 1st day of November, 1912, and that the purchase price of the same was $1,200, and that on account of said sale there had been paid the sum of $150. The defendant answered, in which he admitted the purchase of the land, but alleged that payment in full had been made in substantially the following manner: That upon the oral order of the guardian, the defendant paid J. M. Rose $298; Pollock & Co. $601.25; J. M. White $25; Guy A. Curry $25; county court of Haskell county $120, and to the First National Bank of Quinton $130.75. The plaintiff filed a reply, in which it is denied that any of the sums designated as paid were ever legally made or authorized, and further denies the payment of various sums. Upon the controverted matters thus raised by the pleadings, a trial was had to the court and jury, and a verdict rendered in favor of defendant, and upon a motion for a new trial being duly presented, and overruled, the case was brought to this court for review.

The principal grounds urged for a reversal are that the court erred in its instructions, that the court erred by refusing to direct a verdict in favor of the plaintiff, and that the court erred by refusing to give the instructions requested by the plaintiff. The record discloses that the sale of the land out of which this controversy arose should have been for cash; the object of the sale being for the support and education of the ward, and the improvement of other real estate. The record further discloses that, some two years previous to the sale of the land, the defendant had become the surety on a note for the guardian to Rose for $298, and also one to the First National Bank for $130.75.

The evidence disclosed on the trial of the case shows that the notes to Rose and the First National Bank were executed by the guardian, with the defendant as surety thereon, for the purpose of borrowing money with which to buy an outstanding improvement lease against the land that was sold and other land belonging to the minor. The evidence discloses that the $25 paid to J. M. White and the $25 paid to Guy A. Curry were attorney's fees in conducting the proceedings of sale through the county court. The evidence in this record fully discloses that the amount paid Pollock & Co., in the sum of $601.25, was for the personal obligations of the guardian of Willey Harris, and the ward received no benefit whatever from such payment. The evidence discloses that the defendant was instrumental in bringing about a sale of the land; the guardian testifying:

"A. Yes, sir, he (meaning defendant) was on my note, and also Mr. Fletcher; and times passed by, and passed on, until I seen that 1 wasn't going to get to pay it off myself, and he proposed buying the land, and in buying this land he would pay this note off."

It seems that the primary object in selling the land was for the purpose of enabling the guardian to pay a personal obligation, wherein the defendant was his surety. The record also discloses that the brother of the defendant was in some way connected with the store belonging to Pollock & Co. Just what capacity he occupied in the store the evidence does not disclose. The evidence does fully disclose, however, that the ward never received any benefit from the sale of this 80 acres of land, unless it can be considered that the proceeds of the notes to Rose and to the First National Bank, which purchased the improvement lease, and which enabled him to thereby receive rental on his land, was for his benefit. It does appear conclusively that the defendant was instrumental in taking good care that the personal obligations of the guardian for which he was responsible, and also the personal obligations of the guardian owing the store in which his brother was interested, were paid.

The defendant was aware that the sale should be for cash, and that the object of the sale was for the maintenance and education of the ward and the improvement of other real estate belonging to him. He knew, when he was paying the personal ob-

ligations of the guardian, that he was assisting in a diversion of the funds of the ward, and practicing a fraud upon the court. County courts should see to it, in all cases where real estate belonging to wards is sold for a specific purpose, that the money should be paid into the hands of the guardian before an order of confirmation of sale is issued.

It is claimed on behalf of the defendant that the guardian ordered him to pay his personal account to Pollock & Co. This is half-heartedly denied by the guardian. In his testimony he says that he tried to get the defendant to settle the amount, and was after him time and again to show him a receipt that he had paid the amount to Pollock & Co., and as a matter of fact the full amount due Pollock & Co. had not been paid down to the time of the trial. In answer to the contention of the defendant, it is sufficient to say that the guardian has no authority to direct a purchaser of his ward's property to pay his personal obligations, and where a purchaser of the property of the ward does pay personal obligations of the guardian, he is a party to the diversion of the ward's funds, and an action will lie to recover the amount thus paid. The plaintiff requested an instruction to this effect in the court below, which was refused, and an exception saved thereto. In refusing the instruction we are of the opinion that the court was in error. We are of the opinion that all sums paid out, which were not in some way referable to the true intent and purpose of the order of sale, are recoverable.

In the brief of the defendant he has called our attention to several cases, which in effact hold that, where the money has been paid the guardian in conformity to the order of sale, and the money afterwards diverted by the guardian, that the purchaser was not responsible. Those cases have no application to the one before us.

For errors assigned, the case is reversed and remanded, with directions to grant a new trial.

By the Court: It is so ordered.