## LOWERY v. RICHARDS et al.

No. 16203—Opinion Filed Feb. 16, 1926.

Rehearing Denied Nov. 30, 1926.

**1. Guardian and Ward—Guardian's Sale of Real Estate—Failure of Bidder to Pay—Resale.**

Upon confirmation by the county court of guardian's sale of real estate, the purchase price becomes due and payable. Upon demand and refusal by bidder to pay the same, resale should be ordered. In re Standwaitie's Estate, 73 Okla. 255. 175 Pac. 542.

**2. Same—Resale for Less than First Sale—Liability of First Purchaser for Deficiency.**

The sale of a minor's real property is governed by section 1284, C. O. S. 1921, which provides that if the purchaser neglects or refuses to comply with the terms of the sale under order of the court, the court may order a resale, and if the amount realized on such resale does not cover the bid and the expenses of the previous sale, such purchaser is liable for the deficiency to the estate.

**3. Same—Purchasers Charged With Notice of Guardian's Authority.**

One who purchases at guardian's sale, or one who purchases from the vendee of the guardian's sale, must take notice, at his peril, of the authority of the guardian to make the same.

**4. Same—"Notice"—Purchasers Put Upon Inquiry.**

Where persons are dealing with a guardian relative to the purchase of a minor's real estate, whatever is "notice" enough to excite attention and put a reasonably prudent person on his guard and calls for inquiry. is notice of everything to which the inquiry might have led. When a person has sufficient information to lead him to a fact. he shall be deemed conversant with it.

**5. Guardian and Ward—Compromise and Confession of Judgment by Guardian—Right of Ward to Assert Invalidity.**

A guardian of a minor cannot, by commencing an action on behalf of his ward. thereafter enter into a compromise and settlement of such litigation. and confess judgment against his ward, quieting title to the ward's lands in the defendants or waive any of the substantial rights of the minor. and a judg-

ment entered by confession by the guardian does not create an estoppel against the minor thereafter asserting the invalidity of such judgment.

(Syllabus by Ruth, C.)

Commissioners' Opinion, Division No. 3.

Error from District Court, Carter County; Asa E. Walden, Judge.

Action by Miller Emmett Lowery against C. W. Richards and Corinne Richards. Judgment for defendants, and plaintiff appeals. Reversed with directions.

R. L. Disney, for plaintiff in error.

J. A. Bass and Champion, Champion & George, for defendants in error.

Opinion by RUTH, C. The plaintiff, a duly enrolled Choctaw Indian of one-sixteenth blood, had allotted to him certain lands in Carter county, Okla. In 1912, plaintiff being a minor, the land was sold by his guardian under an order of the county court. The land was appraised at a value of $1,860, and sold for $1,674, or 90 per cent. of the appraised value, the lands being bid off by L. E. Eddy at this price. The sale was confirmed in Eddy, who never paid the purchase price or any part thereof; nevertheless the guardian executed a deed to Eddy dated February 14, 1912. The order of the court required a cash payment, which was not made. On March 8, 1913, Eddy quitclaimed to Richards. After Eddy defaulted in the payment, the guardian offered the land "to any one who would pay $1,474 for the same," Richards was approached by the guardian, and although Richards knew it was a sale of a minor's lands, offered $1,400 for same, but the guardian insisted it would take $1,474 to buy it. Richards paid this sum, and the guardian then secured a quitclaim deed from Eddy to Richards, and the deed from the guardian to Eddy, and the quitclaim deeds from Eddy to Richards were filed for record on the same day. Richards never had seen or talked to Eddy, but dealt for the minor's lands through the guardian, and the guardian's attorney, and tried to purchase the land at private sale for $1,400, knowing it had been sold at public sale under order of the court, and confirmed to Eddy, who had defaulted in the payment of the purchase price, but Richards made no investigation or inquiry whatsoever regarding the guardian sale proceedings.

It then appears that the guardian filed suit on June 23, 1913, to recover the lands, and for $900 as rents and profits. In the meantime, Thomas M. Lowery was discharged as guardian and one Morris Sass appointed, and on September 20, 1913, Morris Sass was substituted as plaintiff as guardian. On the day and date of the substitution, to wit, September 20, 1913, Morris Sass, as guardian, through his attorneys, entered into and filed in the district court in the suit then pending a "stipulation and agreement for judgment."

In this "stipulation" it was agreed that Richards had only paid $1,474 for the land, and that there was still due the estate of the plaintiff $235. This sum, it appears, added to the $1,474 heretofore paid, equalled 90 per cent. of the appraised value, with interest on the deficit or difference between the price actually paid by Richards and the price bid by Eddy at the sale, which bid was 90 per cent. of the appraised value. It was further stipulated that the sum of $235 was a part of the purchase price of the minor's land, and the guardian agreed that his ward, this plaintiff, should have judgment against Richards for $235, and the same should be a vendor's lien upon the land, and that Richards should have judgment against the guardian and his ward, quieting title to the lands in Richards. On the same day and date, to wit, September 20, 1913, the court rendered judgment in conformity with the stipulation. Richards, as appears from his own testimony, was not in court, and appears to have made no investigation or inquiry concerning the action, displayed no interest therein, but upon his attorney advising him of the judgment, he paid the same.

Within six months after attaining his majority, or on June 23, 1923, plaintiff in his own name filed this action to vacate all these actions down to and including the confirmation of the guardian's deed. The answer of Richards admits that he knew at the time he purchased the lands that Eddy had bid $1,674, and further states that the guardian had stated to him that Eddy was unable to raise the funds to complete the purchase, and the guardian "was willing to deed the lands to anyone who would complete his contract, and pay for said lands."

The guardian, the guardian's attorney, and Richards then met in the attorney's office. Richards tried to buy the lands for $1,400, but finally agreed to and did pay $1,474 to the guardian, and thereupon the guardian's deed to Eddy and Eddy's quitclaim deed to Richards were delivered to Richards and duly filed for record. Richards alleges he relied upon the representation of the guardian and the guardian's attorneys, that the quitclaim deed from Eddy conveyed a good and perfect title, and that he is an innocent purchaser for value. He further sets out in his answer the petition, stipulation, and judgment in the action in 1913, and pleads res adjudicata,

and pleads payment of the judgment of $235, and further pleads that it was the duty of plaintiff to come into court within six months after attaining his majority, and seeks to have the judgment of September 20, 1913, vacated, and not having done so, the present action constitutes a collateral attack on said judgment, and the court in the instant case was without jurisdiction to hear and determine this cause.

Plaintiff's reply alleges that defendant's answer admits knowledge of the fact that the land was not sold for 90 per cent. of its appraised value, and defendants took the land with notice of conditions of the sale, and the judgment of September 20, 1913, was wholly void. After plaintiff had introduced. all his evidence, including all court proceedings from the time of the order of sale in 1911 and rested, the defendant Richards was permitted to testify, over objections of counsel for plaintiff, as to the conversation between Richards, the guardian, and the guardian's attorney; exceptions were saved, but after examining the evidence objected to, we cannot determine that the plaintiff was prejudiced thereby, as Richards testified.

They (the guardian and attorney) told him Eddy had bought this land at guardian's sale, but was unable to meet his contract, and that they would sell it to him for $1,-474, and he offered $1,400, but finally paid $1,474; that he made no investigation or inquiry; did not know the amount paid by him was not 90 per cent. of the appraised value; did not know it was $200 less than the appraised value until "someone" sued him, in 1913, for ejectment, and then he did not even go near the court at any time, before, during, or after the trial (or entry of judgment), but upon being informed the court had quieted title in him and rendered judgment against him for $235, he immediately paid the same.

We think upon a review of the whole record the evidence was not prejudicial to plaintiff, but on the other hand, defendant, by his own testimony, has proven, conclusively, culpable negligence on his part throughout the whole proceeding, from its very inception, and he cannot be heard to say he is an innocent purchaser for value and without notice.

It would appear from this record that the filing of the stipulation on September 20, 1913. and the entry of judgment on the stipulation on the day it was filed, this being the same day the new guardian was substituted for the discharged guardian, was intended and conceived to be a well laid plan to preclude the minor from ever asserting his rights after attaining his majority, by getting the court records in such shape as to show that, though this was a private sale by the guardian to Richards, the full 90 per cent. of its appraised value had been paid, and all the rights of the minor had been adjudicated, and to enable the defendant to plead former adjudication, in any action brought after the minor had attained his majority. Upon such a scheme this court can never set the seal of its approval.

Upon the conclusion of all the testimony in this case, the court found against the defendants, rendered judgment in favor of plaintiff, quieting title in him as prayed, and for accounting for rents, profits, and revenues. it appearing from the evidence that defendants had received $30,000 for an oil and gas lease on these lands. Motion for a new trial was filed, and was by the court granted. Motion for judgment for defendants was filed, and upon "retrial" had, counsel for plaintiff and defendants announced they reintroduced the same evidence, subject to the same objections and exceptions saved. The court thereupon, and without assigning any reason therefor, or stating in its judgment the ground upon which it reversed itself, proceeded to render judgment quieting title in the defendants and perpetually enjoining plaintiff "from molesting with the title or possession of defendants." From this judgment plaintiff appeals, and brings this cause here for review upon petition in error and case-made.

Section 1478, C. O. S. 1921, provides that:

"All the proceedings under petition of guardians for sales of property of their wards * * * directing the sale to be made at public or private sale, reselling the same property," etc., "must. he had and made as provided and required by the provisions of law concerning the estates of decedents unless otherwise specifically provided herein." Bank v. Cabell, 52 Okla. 190, 152 Pac. 844.

Section 1284, c. 5 art. 8, C. S. 1921, relating to sales and conveyances of decedents' estates, provides in part:

"If after the confirmation the purchaser, neglects or refuses to comply with the terms of the sale, the court may, on motion of the executor or administrator, and after notice to the purchaser, order a resale to be made of the property. If the amount realized on such resale does not cover the bid and the expenses of the previous sale, such purchaser is liable for the deficiency to the estate."

Upon confirmation by county court of guardian's sale of real estate, purchase price

becomes due and payable, and upon demand and refusal by bidder to pay same, resale should be ordered. In re Standwaitie's Estate, 73 Okla. 255, 175 Pac. 542. The order of the court directing the sale be made for cash, the execution of the guardian's deed to Eddy without payment of cash in the amount bid, was a fraud upon the county court and upon the minor, and was extraneous of the record.

A. statute designed to protect the estate of minors is not a combination of idle words or phrases, but where plain and unambiguous, or having been construed by a court of last resort, constituted a fixed rule which must be strictly followed by all persons dealing with such estates, and they are charged with notice of such statutes, constructions, and orders of the court, and such statutes, unless strictly followed, afford no protection to purchasers of the minor's land.

"The formalities and regulations provided for the sale of the lands of infants and incompetents were enacted in order that the interest of such infants or incompetents might be subserved." In re Bohanan, 37 Okla. 560, 133 Pac. 44.

"County courts should see to it, in all cases where real estate belonging to wards is sold for a specific purpose, that the money should be paid into the hands of the guardians before an order of confirmation of sale is issued," Harris v. Wilcox, 73 Okla. 183, 175 Pac. 352.

It will not be presumed that the county court, in the instant case, failed in its plain duty, and the presumption will be indulged that the guardian represented to the court that the amount bid was actually paid before or at the time of the confirmation, and the fact that it was not so paid constituted a fraud upon the court and the estate of the ward, which may be taken advantage of upon discovery of the fraud, or in case of a minor or incompetent, within the time provided by statute, after the removal of such disabilities. Glory v. Bagby, 79 Okla. 155, 188 Pac. 881. Lytle v. Fulotka, 106 Okla. 86, 233 Pac. 456, will be found illuminating on the point here involved.

We cannot concede the defendant in this case was an innocent purchaser without notice. It is stipulated he was fully advised the land had been sold and the sale confirmed to Eddy, who was unable to pay cash therefor, and the guardian was "peddling" the lands at private sale "to any one who would pay $1,474 for it." Defendant had never seen or talked to Eddy, and made no deal through Eddy to pay the price bid at the public sale ordered by the court, but made an effort to purchase the minor's land for $1,400, and finally agreed to and did pay $1,474, which sum, not being 90 per cent of the appraised value, would of itself avoid the sale, and constituted a constructive fraud upon the court and the minor's estate, even though defendant had been the original purchaser at the guardian's sale, and this fraud being extrinsic of the record, could be taken advantage of by action in the district court to vacate the sale. (Lytle v. Fulotka, supra), and the defense of "innocent purchaser without notice" is not available to the defendant, whose total indifference to the records of the probate court amounts to culpable negligence.

Defendant contends that he thought from what Lowery, the guardian, said that Eddy had paid a sum which added to what he was paying, would make up the 90 per cent. The appraised value was a matter of record. The sum bid by Eddy was a matter of record, and this sum was $1,674, and while the county court had confirmed the sale to Eddy, defendant knew the price bid had not been paid, and he never consulted Eddy or the court records, although fully advised that it was a guardian's sale of a minor's lands under a court order.

"It is a well established rule that one who purchases at guardian's sale or one who purchases from the vendee of the guardian's sale, must take notice, at his peril, of the authority of the guardian to make the sale." Burton v. Compton, 50 Okla. 365, 150 Pac. 1080.

In Creek Land & Imp. Co. v. Davis, 29 Okla. 279, 115 Pac. 468, it is held:

"A purchaser of lands takes them with constructive notice of whatever appears in the conveyances which constitute his claim of title; and if sufficient appears therein to put a prudent man on inquiry, which would, if prosecuted with ordinary diligence, lead to actual notice of right or title in conflict with that he is about to purchase, and he fails to make such inquiry, the law will charge him with the actual notice he would have received if he had made it."

The defendant's testimony discloses he had sufficient notice to put him upon inquiry, and his failure to pursue it was such negligence as will charge him in law with knowledge of all the facts.

In Winsted v. Shank, 68 Okla. 269, 173 Pac. 1041, it was said:

"Whatever is 'notice' enough to excite attention and put a reasonably prudent person on his guard and calls for inquiry, is notice of everything to which such inquiry might have led. When a person has sufficient in-

rormation to lead him to a fact, he shall be deemed conversant with it."

We cannot concede that defendant was dealing with the land in the light of taking up and paying Eddy's deficit, but from his own testimony he appears to have been trying· to purchase the land at a private sale, without the court's sanction, as he tried to obtain title by the payment of only $1,400. If one is permitted to purchase a minor's lands for less than 90 per cent. of its appraised value, and then sit quietly down and await the bringing of an action for the balance, which may never be brought if the fraud is not discovered, it would be a very easy matter to perpetrate the grossest fraud upon the court and the minor, and the fact that months or years later, and after suit brought, the purchaser paid the balance due, is not available as a defense against the alleged fraud.

In Balbridge v. Smith, 76 Okla. 36, 184 Pac. 183, we find the following language employed:

"A judgment based upon a decree of court, which was a fraud, in selling a minor's property, will convey no right nor will the party derive any additional benefit therefrom, nor can he strengthen his title by such a procedure."

Courts will ever jealously guard the rights of innocent purchasers without notice, but infants' or minors' rights are certainly as sacred as those of purchasers who had such notice as would put them upon inquiry.

This brings us to the consideration of the proposition as to whether the question is res adjudicata by reason of the action filed · by the guardian in 1913 to vacate the guardian's deed of 1912. At the time that action was filed, this plaintiff was 10 or 11 years of age, incapable of taking care of himself, or even of selecting or suggesting who should be his guardian, and no doubt was in complete ignorance of anything transpiring affecting his estate. Action was filed by his then guardian, praying an accounting, for $900 as rents and profits, and for quiet title. The action was filed by Thomas Lowery, as guardian, "by permission" of the · county court, and while the record is silent as to the date of filing, it was after June 20, 1913, and prior to September 20, 1913, as the record discloses that on the last-named date, Morris Sass was substituted as guardian, he immediately (September 20, 1913) filed his "stipulation and agreement for judgment", wherein he confessed judgment quieting title in this defendant, and accepted judgment against defendant in favor of plaintiff in the sum of $235, and had the costs taxed against

the minor. The substitution of guardian, the confession of judgment, and the journal entry of judgment, appear to have been executed and filed at practically the same instant of time.

Defendant in his brief says: "If the court will look at the agreed statement of facts, it will see that the cards were laid on top of the table." We have examined the "stipulation," and cannot say the cards were laid on the table "face up". The court was not advised of the appraised value of the lands, was not advised this was a private sale, or that Eddy had defaulted in his payment, and was not advised whether the amount, $235, was a deferred payment provided for under the terms of the sale, or a mere mistake in computation of the sum due, and the court might easily have been led to believe it was the completion of the sale of a minor's lands, under an order of the county court, providing the lands might be sold for part cash and the balance in deferred payments, such order being within the power of the county court to make under the statutes of this state.

Did the substituted guardian have authority to bind his ward by stipulation confessing judgment?

Section 280, C. O. S. 1921, adopted from Kansas provides:

"The guardian of an infant or person of unsound mind, or attorney for a person in prison, shall deny, in the answer, all the material allegations of the petition prejudicial to such defendant." Brenner v. Biglow, 8 Kan. 496.

We cannot construe the law to be that, while a guardian must deny, in his answer, all the material allegations in plaintiff's petition, he may turn the cause for quieting title "face about," and by filing his petition on behalf of the ward, come in and confess judgment by stipulation, quieting title in defendant, and this court has never committed itself to such a construction.

In Title Guaranty & Surety Co. v. Foster, 84 Okla. 291, 203 Pac. 231, the guardian brought action against the Title Guaranty & Surety Company and the American Surety Company, which last-named company filed its counterclaim for $78, premiums due on the former guardian's bond, and it was stipulated that this sum should be off-set against judgment in favor of the guardian. On appeal this court said:

"The stipulation was evidently founded on a mistaken view of the legal rights of the infant, and is not binding on the court. The guardian cannot irrevocably waive a legal right of his ward. * * * The court is not

bound by that stipulation." Johnson v. Thornburg (pending on rehearing) ; Richback v. Graves, 42 Ark. 222; McCloy & Trotter v. Arnett, 47 Ark. 445; Kempner v. Dooley, 60 Ark. 526, 31 S. W. 145; Branch v. Mitchell, 24 Ark. 431; Burt v. McBain, 29 Mich. 261; Driver v. Evans, 47 Ark. 297; Knights Templers v. Crayton, 209 Ill. 550; Cochran v. McDowell, 15 Ill. 10; Whitehead v. Jones, 56 Ala. 152; Schamfeffer v. Council Grove, 18 Kan. 24; Cummings v. Byrd, 33 Cine. L. Bul. (Ohio) 332; Hobbs v. Nashville, C. & St. L. R. R. Co., 122 Ala. 602, 26 So. 139, 82 A. S. R. 103.

In Bell v. Fitzpatrick, 53 Okla. 574, 157 Pac. 334, this court said:

"Neither can the guardian of said minor, by commencing an action and thereafter entering into a compromise and settlement of such litigation, by which same was dismissed, divest the title of said minor to said lands, nor confer any rights upon the grantee in such void conveyance, nor give any validity thereto, nor create an estoppel against said allottee, thereafter asserting the invalidity of such void conveyance." See 31 C. J. 1143.

The sale to Richards, in this case, being a void transaction because of the fraud perpetrated upon the probate court and the minor's estate, the void sale cannot be validated by an action brought in the district court by the guardian to cancel a guardian's deed, and then upon confession of judgment by the guardian, quieting title in the purchaser at such void sale, divest the minor of his title, and more particularly is this true where the fraud practiced upon the probate court and the ward's estate is carried over to the district court and remains undisclosed by the record, and a judgment rendered upon such stipulation is void and may be collaterally attacked.

In Pinchback v. Graves, supra, it is said:

"No judgment should be rendered affecting the interests of an infant until after defense by guardian, and this defense should not be a mere perfunctory and formal one, but real and earnest. He should put in issue, and require proof of, every material allegation of a complaint prejudicial to the infant, whether it be true or not. He * * * can make no concessions on his own knowledge. He must put and keep the plaintiff at arm's length."

The interests of the ward must be as jealously guarded when he is plaintiff by guardian, as when he is defendant, and for the reasons herein stated, the judgment of the trial court is reversed, and this cause remanded, with directions to the trial court to vacate its judgment quieting title to the lands involved in the defendant, and to overrule the defendants' motion for a new trial, and to reinstate the former judgment quieting title in the plaintiff, Miller Emmett Lowery, and for further proceedings as to rents and profits consistent with the views herein expressed.

By the Court: It is so ordered.

Note.—See under (1, 2) 28 C. J. p. 1191 §332. (3) 28 C. J. p. 1201 §351. (4) 28 C. J. p. 1202 §351; 20 R. C. L. p. 346; 3 R. C. L. Supp. p. 1058; 4 R. C. L. Supp. p. 1355; 5 R. C. L. Supp. p. 1100. (5) 28 C. J. p. 1126 §210; 31 C. J. p. 1143 §304.