ARKANSAS TRUST COMPANY, CURATOR, *v.* SIMS.

4-5591                                                            133 S. W. 2d 854

Opinion delivered October 23, 1939.

*B. N. Florence,* for appellant.

*C. D. Harmon,* for appellee.

GRIFFIN SMITH, C. J. This appeal is from the chancellor's action in declining to vacate a decree after lapse of the term at which it was rendered.

Kirk Petty, Jr., and Paul, Carl, and Loreene Petty, are minors. Arkansas Trust Company is curator of their estate. Acting on behalf of the minors, the Trust Company loaned certain funds to J. D. Sims and his wife, Doshia. To secure their note, they executed a deed in trust to "Part of Lot Eight of Smith's Survey of acre lots in the Southwest Quarter of the Southwest Quarter of Section Five," etc. The lot is more particularly described by metes and bounds, as shown in the margin.[1]

Default having occurred, J. A. Stallcup, as the designated trustee, and Arkansas Trust Company, as curator, brought suit to foreclose. Complaint was filed March 18, 1937. W. S. Sims, a brother of J. D. Sims, was made a defendant, the allegation being that he claimed an undisclosed interest in the property.

W. S. Sims (March 30, 1937) answered and crosscomplained. He claimed purchase from the state of Arkansas of the land in question. Profert was made of deed dated March 8, 1937. He prayed that title to the land

---

[1] "Part of Lot Eight of Smith's Survey of acre lots in the Southwest Quarter of the Southwest Quarter of Section Five, Township Three South of Range Nineteen West, which part of said Lot Eight is more particularly described as follows: Commence at the southwest corner of said Section Five, which is the common corner of Sections Five, Six, Seven, and Eight, in said township and range and run thence east on the section line 680 feet to the east side of Summer street, thence north 315 feet to the southwest corner of the tract of land herein to be conveyed; thence continuing north along the east line of Summer Street, a distance of 105 feet; thence east along the north line of said Lot Eight, a distance of 136 feet; thence south parallel with Summer street 105 feet, thence west 136 feet, more or less, to the east line of Summer street, and to the place of beginning of the tract herein conveyed."

be divested out of the other interested parties and that it be vested in him.

A default decree was rendered April 28, 1937, wherein W. S. Sims was held to be the true owner of the mortgaged property. It recites due service of process "by summons against the plaintiff, Arkansas Trust Company, curator for [the minors], and against J. D. Sims and Doshia Sims;" that the Trust Company as curator and the minors and other defendants failed to answer, demur, or otherwise plead; that the cause was submitted upon the answer and cross-complaint of W. S. Sims, sometimes known as W. S. Fondren, Jr.; upon the summons served on the Trust Company as curator, and upon the summons served upon J. D. Sims and Doshia Sims, together with the return of the sheriff showing service thereon, ". . . and the evidence of witnesses given orally under oath in open court."

February 8, 1938—nine months and ten days after the decree was rendered—appellants moved the court to set the decree aside. Three reasons are assigned: (1) That fraud was practiced by the successful party in obtaining the decree; (2) that errors in the decree are shown by the infant cross-defendants within twelve months after arriving at their majority; (3) that the decree, as rendered on the cross-complaint, was without notice or service upon the minor defendants, and that they have a valid defense to the cross-complaint.

W. S. Sims demurred to the motion, or complaint, alleging (1) that it did not state facts sufficient to constitute a cause of action in that it failed to give a reasonable excuse for plaintiffs' failure to answer the cross-complaint; (2) that a meritorious defense was not shown to the cross-complaint, and there was a failure to answer; (3) that the subject-matter was *res judicata;* that the complaint does not show there was any fraud practiced by the successful party in obtaining the decree; (5) that there are defective parties plaintiff for the reason that the minors by their mother as next friend were not parties to the original action as individuals, and that J. A. Stallcup was not a party to the original action.

The demurrer was sustained.

It has often been held error, where minors are involved, to decree a foreclosure of property in which they are interested without a *bona fide* defense by the regular guardian, curator, or by a guardian *ad litem,* and without proof of the allegations of the complaint. But, as was said in *Boyd* v. *Roane,* 49 Ark. 397, 5 S. W. 704, "a decree so rendered in the exercise of jurisdiction rightly acquired is not void."

In *Pillow* v. *Sentelle,* 49 Ark. 430, 5 S. W. 783, it was said: "The guardian *ad litem* having appeared and answered the cross-complaint it was not necessary that the minor defendants should have been served with process. They had been served for the purpose of causing them to appear in court. That having been done, the court was authorized to appoint the guardian *ad litem,* who, having accepted the appointment, thereupon became such guardian for the purpose of defending them in the original suit and cross-action growing out of and forming part of it. It would be a useless formality to bring them again into court, by process, for the purpose of re-appointing the person already appointed, or appointing another person guardian *ad litem* to defend for them against the cross-complaint, when they already had such guardian and the court had authority to remove him and appoint another in his stead, whenever the interests of the infants required such change. Neither was it necessary that their guardian should be served with process, he having appeared and answered."

In *Woodall* v. *Delatour,* 43 Ark. 521, it was said that the default of a guardian could not prejudice his ward; that it was the court's duty, upon failure of the guardian to appear and make defense, to appoint a guardian *ad litem,* and direct him to answer or make such other defense as should be required, and "Until that was done the court could not proceed in the cause."

Other cases hold that the court, having acquired jurisdiction of the person of the minor through action of the guardian or curator in filing a proceeding in a representative capacity, and the court also having jurisdic-

tion of the subject-matter, a judgment or decree rendered in the absence of a defense is voidable only, and not void.

The Boyd-Roane Case, *supra,* is typical. Commenting on this holding, Mr. Justice Wood, in writing the court's opinion in *Martin* v. *Gwyn,* 90 Ark. 44, 117 S. W. 754, cited *Richards* v. *Richards, Adm'r.,* 10 Bush 617, and *Pearson* v. *Vance,* 85 Ark. 272, 107 S. W. 986.

Mr. Justice Battle, in an opinion for the court in *Sexton* v. *Crebbins,* 80 Ark. 519, 98 S. W. 116, held that the lower court erred in rendering a decree against two minors before a cross-complaint filed against them had been answered. He quoted from § 6023 of Kirby's Digest (now § 1329 of Pope's Digest). The section in full is: "The defense of an infant must be by his regular guardian, or by a guardian appointed to defend for him, where no regular guardian appears, or where the court directs a defense by a guardian appointed for that purpose. No judgment can be rendered against an infant until after a defense by a guardan."

The principle has been emphasized that defense of a minor's legal rights ". . . should not be a mere perfunctory and formal one, but real and earnest. [The guardian or curator] should put in issue, and require proof of, every material allegation of a complaint prejudicial to the infant, whether it be true or not. He is not required to verify the answer, and can make no concessions on his own knowledge. He must put and keep the plaintiff at arm's length." *Pinchback* v. *Graves,* 42 Ark. 222.

Cases are numerous where judgments or decrees were reversed because the infant defendant was not served with summons before a guardian *ad litem* had been appointed. *Moore* v. *Wilson,* 180 Ark. 41, 20 S. W. 2d 310.

If the instant suit is a collateral attack, and if the decree complained of is not void, appellants cannot prevail. It is our view, however, that the proceeding is not a collateral attack within the meaning of our decisions.

Section 8246 of Pope's Digest, subdivision eight, provides that a minor, within twelve months after reaching his or her majority, may move to modify or vacate an erroneous judgment. Reference is made to § 8233 of the Digest. See, also, § 8248 for procedural requirements.

The complaint alleges the original indebtedness, execution of the mortgage or deed in trust, the duty of J. D. and Doshia Sims to pay taxes and insurance, and their failure so to do; the contention of W. S. Sims that he holds a tax title, etc. There is a specific charge of fraud in the alleged conspiracy between J. D. and Doshia Sims upon the one hand and W. S. Sims upon the other, culminating in the attempted purchase by W. S. Sims of the land in question. If it be true that the tax title was acquired for the purpose of aiding J. D. and Doshia Sims to indirectly defeat the deed in trust, the minors had a defense which should have been interposed by the curator, or by a guardian *ad litem* appointed to answer and defend for them.

While the description by metes and bounds of that part of Lot 8 included in the trust deed is good, the state's deed No. 56,645 to forfeited town lot sold to W. S. Sims is hopelessly defective in that it calls for "Pt. 8, SW, SW, Sec. 5, Twp. 3 S, Range 19 W." The particular part which it is sought to convey is not designated. *Northern Road Improvement District of Arkansas County* v. *Zimmerman*, 188 Ark. 627, 67 S. W. 2d 197.

The purpose, and the only purpose of the instant suit, was to have the decree of April 28th vacated because of irregularities, at least one of which appeared upon the face of the record. Mr. Justice HART, in *Hooper* v. *Wist*, 138 Ark. 289, 211 S. W. 143, quoted from the second edition of Black on Judgments, vol. 1, paragraph 252, and approved the text writer's definitions of "direct attack," and "collateral attack," as follows: ". . . the word 'collateral' is always used as the antithesis of 'direct' and it is therefore wide enough to embrace any independent proceeding. To constitute a direct attack upon a judgment, it is said, it is necessary that a pro-

ceeding be instituted for that very purpose. If an appeal is taken from a judgment, or a writ of error, or if motion is made to vacate or set it aside on account of some alleged irregularity, the attack is obviously direct, the sole object of the proceeding being to deny and disprove the apparent validity of the judgment. But if the action or proceeding has an independent purpose and contemplates some other relief or result, although the overturning of the judgment may be important or even necessary to its success, then the attack upon the judgment is collateral and falls within the rule. Thus, whether a judgment is irregular or erroneous is not a legitimate inquiry in a suit brought for its enforcement."

We conclude, therefore, that the minors, who moved in the name of their curator and by their mother as next friend, had a right, under our statutes, to petition the court to vacate the erroneous judgment, and since the error which calls for an avoidance of the judgment is expressly presented by recitations in the judgment itself, it follows that the chancellor's action in sustaining appellees' demurrer was improper.

Nor does the fact that the Sims note was made payable to the order of "Arkansas Trust Company, curator for [the minors]" afford appellees any relief. Admittedly the note belonged to the Petty children, whose curator properly undertook to collect it for them. Appellees were not prejudiced by reason of the mother's joinder.

The order, judgment, or decree sustaining the demurrer is reversed, and the cause is remanded with directions to vacate the decree of April 28, 1937.