## JOHNSON v. JAMES et al.

No. 14353—Opinion Filed Jan. 22, 1924.

Rehearing Denied March 4, 1924.

(Syllabus.)

1. **Guardian and Ward—Setting Aside Guardian's Sale for Fraud—Burden of Proof.**

Where it is sought to vacate or set aside a guardian's sale on the ground of fraud,

the burden of proof rests upon the one alleging fraud, and the proof thereof must be clear and convincing.

## 2. Same—Collateral Attack—Insufficiency of Grounds.

In a guardian's sale of real estate at private sale, where the return of sale shows, the decree of confirmation finds, and the guardian's deed recites that the land sold for a sum equal to 90 per cent. of the appraised value thereof, the sale will not be disturbed on collateral attack because the guardian misapplied funds of the ward by paying delinquent taxes upon the land after such sale.

## 3. Same—Sale of Land of Two Minors.

Where the petition for the sale of real estate by the guardian of two minors prays for an order authorizing the sale of the lands of both minors, and the land of each minor is separately described in said petition, and in all subsequent proceedings, and is sold separately and for different considerations, held, that the petition and subsequent proceedings do not show the sale of the land of one of said minors for the benefit of the other; and held, further, that where the record shows that the county court had jurisdiction to order the sale, and nothing appears on the face of the record which renders the sale void, such sale will, when attacked collaterally, be upheld.

Error from District Court, Okfuskee County; John L. Norman, Judge.

Action by Mariah Johnson against E. W. James and others. Judgment for defendants, and plaintiff appeals. Affirmed.

Hummer & Foster and R. E. Simpson, for plaintiff in error.

J. B. Patterson and Phillips & Douglass, for defendants in error.

NICHOLSON, J. Mariah Johnson, a Creek freedman, brought this action against E. W. James and others to recover the possession of certain land and to cancel a deed executed by her guardian, conveying said land to defendant E. W. James, and for rents and profits in the sum of $5,000. From a judgment in favor of the defendants, the plaintiff has appealed.

It appears that in June, 1912, the guardian of Mariah Johnson, a minor, in pursuance of an order of the county court of Okfuskee county, sold the land involved to the defendant E. W. James; that said sale was duly confirmed and a guardian's deed executed and delivered to the defendant James, conveying the land to him; that he afterwards sold and conveyed the land to one C. D. Hines; that Hines and wife executed mortgages covering said land to different parties, and such mort-

gages were afterwards foreclosed and the land sold under a decree of foreclosure to the defendant Paul Murray.

The plaintiff attacked the sale by the guardian on various grounds, among which was that the sale was void. because of a conspiracy on the part of the guardian and the purchaser, whereby an agricultural lease was executed by the guardian to the purchaser just prior to the sale, whereby the premises were leased to the purchaser for a term of five years, which lease was placed of record; that such lease was executed without any consideration therefor and operated to prevent competitive bidding for the land.

The evidence shows that the land in controversy was rough, unimproved, and no part thereof was in cultivation; that it was inclosed in a large pasture belonging to a Mr. Wilson, who refused to pay rent therefor; that in an attempt to compel Wilson to pay for the use of the land, the guardian executed to James a lease for a term of five years, and presented the same to the county court for approval. The purpose of the lease was fully explained to the court, and he was advised that no rental was to be paid by James, and, after being fully advised in the matter, the court approved the lease. James testified that there was no understanding between him and the guardian that he would bid on the land; that it was the understanding that the lease should not be held against the land and that his recollection was that he executed a release thereof. He further testified that the first information he received as to the sale of the land was when he saw the notice of sale. He also testified that his wife and the wife of the guardian were cousins; that he and the guardian had been thrown together socially and have, since this transaction, been associated in business deals.

W. R. Blake, the guardian, testified in regard to the execution of the lease, and the sale of the land as follows:

"The facts in regard to that was about this: I had been trying some time to get rental from the people who were pasturing this land. The mother of these people was poor and was after me for funds from the land and I hit on the idea that may be I could execute a lease on the land and force the people that were pasturing it to pay the rentals and it was my request that the lease was executed to Mr. James. I just simply asked him that that be done that way, and after the lease was executed and approved by the county court still we could get nothing out of Mr. Wilson, who was grazing the land. He said, 'Fence it up if you don't want

me to graze it': and we couldn't afford to fence it. When we fell down on that we started the proceedings to sell the land. The taxes was growing on it and the mother of the children had to have money and the land was put up and sold at their request; the mother of the children and her brother, old Dick Barnett, came to see me and insisted that it be sold."

It is insisted that this evidence, coupled with the circumstances surrounding the transaction, shows that the guardian and the purchaser entered into a collusive agreement and in carrying out that agreement had the lease executed and recorded for the purpose of lessening the value of the land to a prospective purchaser; that the effect of this action was to chill the sale and stifle competition, and that this was done with a premeditated design on their part to transfer the title to the land to James.

The trial court found generally for the defendants, and this carried with it the finding that there was no fraud or collusion between the guardian and the purchaser. An examination of the record convinces us that plaintiff failed to make out a case of fraud, and that the court was justified in so holding. While the execution of the lease, and placing the same of record just prior to instituting the proceedings for the sale of the land, if unexplained, might point toward a collusive agreement between the guardian and the purchaser, yet this transaction was satisfactorily explained by both of them, and nothing was offered to refute their testimony.

It is well settled that where it is sought to vacate or set aside a sale on the ground of fraud, the burden of proof rests upon the one alleging fraud, and the proof thereof must be clear and convincing. 24 Cyc. 41. The plaintiff failed to sustain the burden cast upon her.

It is next urged that the evidence shows that the guardian's sale was made at private sale, and that the premises were sold for less than 90 per cent. of the appraised value.

The land was appraised at $800; the bid submitted was in the following words:

"I further offer the sum of $720 for title to S. W. quarter of sec. 29, Twp. 12 N., R. 11 E., belonging to Mariah Johnson, minor, taxes to be paid by guardian."

The guardian's return of sale shows that the land sold for $720, cash in hand, subject to approval by the court. Notice of the hearing of the return of sale shows and the decree of confirmation finds that the land sold for $720, and the guardian's deed recites a consideration of that amount paid. This sum was exactly 90 per cent. of the appraised value.

In the guardian's annual report filed on the 21st day of September, 1912, he charged himself with $720, as the proceeds of the sale of the land. So far as the record discloses, there were no restrictions upon this fund and no requirement that such fund or any part thereof should be used in liquidation of any debt, claim or charge against the estate of the ward. This annual report also shows that the guardian paid taxes for 1910 and 1911, amounting to $78.70, and the fact that the guardian paid said sum as taxes upon the land is not disputed.

The plaintiff argues that the rule of caveat emptor applies to a guardian's sale, and that the purchaser at such sale acquired only such interest as the ward might have in the property sold. This position is correct. In re Standwaitie's Estate, 73 Oklahoma, 175 Pac. 542; Brown v. Thompson, 73 Oklahoma, 175 Pac. 931. But because this rule is applicable, it does not necessarily follow that because the guardian paid taxes due upon the land the sale was for less than 90 per cent. of the appraised value.

In David Adler, etc., Clothing Company v. Hellman et al. (Neb.) 95 N. W. 467, cited and relied upon by the plaintiff, it was held that where the plaintiff bid in the property involved in a suit at two-thirds of its appraised value, and at a price sufficient to pay the decree, it had no right, after confirmation, to have money in the hands of the receiver applied in payment of taxes on the property. That case was an appeal from an order of confirmation and from an order approving a receiver's final report by which the lower court had approved the payment of taxes upon the property sold, by the receiver, after confirmation of the sale, and the court affirmed the order of confirmation, conditioned upon the plaintiff's paying into court the amount of taxes paid by the receiver. That was a direct attack upon the order of confirmation and order approving the receiver's report, while the case at bar is a collateral attack upon the guardian's sale. Had objection been made to the report of the guardian wherein he took credit for the sum of $78.70 for taxes paid, doubtless this item would have been disallowed by the county court. If not, that error would have been corrected on appeal, for the purchaser was not entitled to have these taxes paid by the guardian. The record affirmatively shows

a sale for an amount equal to 90 per cent. of the appraised value of the land.

This sale was duly confirmed and a deed executed, and delivered in pursuance of the decree of confirmation. and the sale will not be disturbed because the guardian misapplied certain funds of the ward by paying taxes which he was not required to pay.

It is next contended that the sale was void because the land of the plaintiff was advertised and sold jointly with noncontiguous lands belonging to George Johnson, the brother of the plaintiff, and no indication was made in the proceedings that bids would be received upon the land of the plaintiff separately from that of her brother; that the petition for the sale of said land alleged that it was necessary that the lands be sold for the purpose of paying taxes upon the land of George Johnson and for the education and maintenance of George Johnson. as well as the plaintiff, and that the decree of sale directed that said land be sold for such purposes, and the case of Jackson v. Carroll, 86 Okla. 230, 207 Pac. 735, is relied upon as sustaining this contention.

The facts in that case are not the same as the facts in the case at bar. In that case a guardian for three minors, each of whom owned a tract of land. applied to the county court for an order to sell the three tracts. and in the petition did not separately set out the land of each ward, or the lands of each which it was sought to sell but the three tracts were described as one, and said lands were ordered sold as one tract, and were sold for one lump sum, there being nothing in the record to designate the separate land of each minor, while in this case the lands of Mariah Johnson and George Johnson were separately described throughout the entire proceedings, were sold separately and for different considerations.

The petition for the sale is not, in our opinion, subject to the construction claimed by the plaintiff. It is alleged therein that the real estate should be sold for the education and maintenance of the min rs. and it is recited that the taxes for the years 1909, 1910, and 1911 were due and unpaid, and there were no funds belonging to said minors with which to pay the s  e, and by the decree of sale the court found that the sale of the real estate of said minors was necessary for the support, maintenance, and education of said wards, and raising funds necessary to meet the expenses thereof and the further expense of taxes levied and assessed against the estates of said wards. and was for the best interest of said wards.

It cannot be said that the petition sought or the decree ordered a sale of the lands of Mariah Johnson for the purpose of maintaining and educating George Johnson, or the payment of taxes on his land. The land was separately described and that owned by each minor was designated as being so owned. The only reasonable construction to be placed upon the petition and decree is that the lands of Mariah Johnson were sought to be sold, and were sold, for her maintenance and education, and to pay the taxes levied and assessed against her estate. The facts in Gaines v. Montgomery et al., 82 Okla. 275, 200 Pac. 219, relied upon by the plaintiff. are so at variance with the facts in the case at bar as to render that case valueless as authority for the contention here made.

In Burris v. Straughn, No. 14147, decided July 10, 1923, pending on rehearing, 23 Okla. App. Ct. Rep. 64, the facts were that the guardian of three minors petitioned the county court to sell the separate real estate belonging to his three wards, and separately described the land of each ward in the petition, but in the decree of sale the guardian was authorized to sell the lands of the three minors at private sale in one tract, or separate tracts, as the guardian deemed most beneficial. The lands were separately appraised and a return of sale made showing the sale of all the land for one sum, and it was held that the order did not necessarily result in the sale of the land of one for the benefit of the others, or result in the court being unable to determine the amount received for the lands of each minor, and in the absence of the contrary appearing from the face of the record. it should be presumed that the court, upon confirmation, found that the sale had been legally made. instead of being made in violation of law.

In the case at bar, it is not necessary that we indulge the presumption of the legality of the sale as was done in that case, for the proceedings here involved fairly show a sale of the separate lands of Mariah Johnson for her separate maintenance and education, and do not show the sale of her lands for the maintenance and education of the other ward. A sale for the purpose mentioned was authorized by section 6552, Rev. Laws 1910, and as the record shows that the county court had jurisdiction to order the sale and nothing appearing on the face of the record which would render the sale void, the judgment of the trial court is correct, and such judgment is affirmed.

JOHNSON, C. J., and McNEILL, COCHRAN, and MASON, JJ., concur.