**LYTLE et al. v. FULOTKA et al.**

No. 13478—Opinion Filed Feb. 3, 1925.

1. **Indians—Jurisdiction of Probate Courts to Sell Inherited Lands.**

Probate courts of the state of Oklahoma have jurisdiction to sell the inherited lands of incompetent adult full-blood Indians of the Five Civilized Tribes.

2. **Guardian and Ward — Sale of Ward's Lands—Direct Attack by Equitable Proceedings for Extrinsic Fraud.**

An equitable proceeding to recover real estate and cancel guardian's deed and sale in the county court, when based on extrinsic fraud of the guardian, participated in by the purchaser at such sale, is a direct attack upon such proceedings.

3. **Same—"Extrinsic Fraud" — Secret Performed Agreement for Payment of Only Part of Bid.**

Where a guardian sells the lands of his ward at private sale on a secret understanding that the purchaser will pay only part of the bid, which agreement is carried out, such facts constitute extrinsic fraud upon the estate of the ward, and the sale may be set aside in an action by the ward against the purchaser, or any other person who acquires rights in said lands with knowledge or notice of such secret fraud, notwithstanding the return shows, the decree of confirmation finds, and the deed recites, that the land sold for the full amount of the bid.

4. **Indians—State Statute of Limitations Inapplicable in Action for Restricted Lands.**

The five years' statute of limitations

against recovery of lands sold at judicial sale, saving to minors three years after removal of disability, does not apply to actions commenced by restricted Indians for the recovery of their restricted lands.

### 5. Disposition of Cause.

Record examined, and held, no rights of innocent purchasers have intervened, and the deed and proceedings of guardian sale should be canceled, protecting present holder of the land against the purchaser at guardian sale.

(Syllabus by Estes, C.)

Commissioners' Opinion, Division No. 2.

Error from District Court, Wagoner County; E. A. Summers, Judge.

Action by Susan Fulotka et al. against C. F. Lytle et al. Judgment for money recovery for plaintiffs, and both parties bring error. Reversed and remanded, with directions for judgment for plaintiffs for cancellation, and accounting among the parties.

John C. Graves, Chas. G. Watts, F. B. Righter, and W. O. Rittenhouse, for plaintiffs in error

E. L. Kirby and Neff & Neff, for defendants in error.

Opinion by ESTES, C. Parties will be referred to as they appeared in the trial court. Susan Fulotka, Wesley Kelley, Eliza George, and Lydia Vann, a minor, by her guardian and next friend, Connie Murphy, sued C. F. Lytle to quiet title by cancellation of deeds and to recover title and possession and profits of real estate. R. I. Bilby and N. V. Bilby, heirs of, and N. V. Bilby, administrator of, the estate of John S. Bilby, deceased, intervened to defend the warrenty deed of John S. Bilby. Jacob A. Bearman was made a party by order of the court for the same purpose. Plaintiffs were the heirs at law of one Toby Kelley, a full-blood Creek Indian, who was the sole heir of Sukie Kelley, to whom the land in controversy was allotted as her proportionate part of the lands of the Creek Nation. She died before receiving her allotment, and patents were issued in the name of her heirs, August 6, 1904. Between the years 1906 and 1908 various deeds purporting to convey the allotment of Sukie Kelley to the Western Investment Company were executed by Toby Kelley and other persons, claiming to be the heirs of Sukie Kelley. All Indians referred to were of the full-blood. These conveyances, however, were not approved by the Secretary of the Interior, and it is a conceded fact that all of said conveyances were void. On April 28, 1909, the Western Investment Company was adjudged bankrupt, and its trustees conveyed all its interest in the land in controversy to John

S. Bilby and Jacob A. Bearman. Thereafter, on the 11th day of February, 1910, John S. Bilby and Jacob A. Bearman, for the consideration of $4,000, conveyed the land by warranty deed to C. F. Lytle, who has since been in possession thereof. In January, 1910, Toby Kelley was declared to be an incompetent by the probate court of Wagoner county, and Connie Murphy duly appointed guardian of his person and estate. On May 25, 1912, said guardian filed his petition in the county court of Wagoner county for the sale of the land. The land was afterwards sold at private sale to Jacob A. Bearman and John S. Bilby. Upon return, the sale was duly confirmed and the guardian's deed issued to said purchasers. Thereafter, the said Bearman and Bilby, without any additional consideration from defendant Lytle, conveyed said land to Lytle by quitclaim deed to quiet title in the latter. The court found that there was a balance due the estate of Toby Kelley upon such sale of $800, which had not been paid. The judgment quieted title in defendant Lytle and gave plaintiffs, as heirs of Toby Kelley, judgment for $800, interest and costs, being the unpaid balance of the purchase price, against Bearman and the Bilbys, and made same a lien upon the land, from which both parties have appealed. The errors assigned by both parties appear in the questions herein discussed.

1. The probate courts of the state of Oklahoma have jurisdiction to sell the inherited lands of incompetent adult full-blood Indians of the Five Civilized Tribes. It is contended that section 6 of the Act of May 27, 1908, grants jurisdiction to the probate courts of the state of Oklahoma only in the case of minor allottees. Said section is limited by its terms to minors and minor allottees, but the probate courts of this state and former Indian Territory have habitually exercised probate jurisdiction, not only over the estates of minor allottees, but of minor heirs as well. Yarhola v. Strough, 64 Okla. 195, 166 Pac. 729. Section 6 of such act is not the source of jurisdiction of the probate courts of the state of Oklahoma over the estates of Indian minors. It is merely declaratory of the law as it had existed since the passage of the Act of April 28, 1904, if not before. By that act it was provided:

"And full and complete jurisdiction is hereby conferred upon the district courts in said territory in the settlement of all estates of decedents, the guardianships of minors and incompetents, whether Indian, freedman or otherwise."

Thus, full probate jurisdiction was granted to the district courts of Indian Territory

over the estates of decedents, minors, and incompetents, "whether Indian, freedmen or otherwise." Morrison v. Burnett, 154 Fed. (C. C. A.) 617; Jennings v. Wood, 192 Fed. (C. C. A.) 507; Robinson v. Long Gas Co., 221 Fed. (C. C. A.) 398; Cowles v. Lee, 35 Okla. 159, 128 Pac. 688; Wellsville Oil Co. v. Miller, 44 Okla. 493, 145 Pac. 344.

Upon the admission of the state into the Union, this jurisdiction was, by virtue of the Constitution and Enabling Act, conferred upon the probate courts of the state. Congress recognized the jurisdiction of the probate courts over the estates of incompetents by section 2 of the Act of May 27, 1908, when, in providing for the leasing of restricted lands for oil and gas, it added this proviso:

"And provided further that the jurisdiction of the probate courts of the state of Oklahoma, over lands of minors and incompetents shall be subject to the foregoing provisions."

2. Plaintiffs alleged, among other things: "* * * That early in the year 1912, one J. A. Bearman approached said guardian, Connie Murphy, and suggested that he allow J. A. Bearman and John S. Bilby to perfect their title which they had attempted to acquire to said land, by means of a guardian's deed approved by the county court of Wagoner county; that it was then and there agreed that F. B. Righter, who was the attorney for J. A. Bearman, would be allowed to conduct the proceedings for the guardian's sale; that no one but Bearman and Bilby would be allowed to bid; that from any bid they made they would be allowed to retain the sum of $800; that this would be done by said guardian as soon as the same should be completed, filing a petition to be allowed to refund said Bearman and Bilby said sum of $800, which it was expected the county court would grant without any investigation, and that it was understood and agreed that no bona fide sale for the actual value of said land would be made; that a petition for sale was prepared by said F. B. Righter, pursuant to said agreement, in which the real reason for said sale was not stated, but in which it was stated a sale was desired for investment purposes and for making improvements on other lands of the ward; that said guardian signed said petition as prepared, thinking it was proper to do so; that an order of sale was granted; that the land was appraised at $2,150; that a bid was made by said Bearman and Bilby for $1,935, the minimum sale price; that title was asserted under said former void deeds so as to prevent all others from bidding; that at the time it was understood and agreed between said Bearman and Bilby and said guardian that the rebate of $800 would be allowed from said pretended sale price and that the actual price to be paid would be $1,135;

that said sale was confirmed, and pursuant to said prior agreement, a petition was filed to permit the refund of $800 to said Bearman and Bilby, which petition was granted and the said $800 was refunded and that sale was for less than 90 per cent. of the appraised value of the lands and was made for the purpose of ratifying former deeds to said land, which had been made in violation of the acts of Congress relating to the conveyance of lands of restricted Indians."

John S. Bilby was deceased at the time of the trial, and Mr. Bearman did not testify. The undisputed testimony of Murphy, the guardian, was:

"A. Jake Bearman, and said he and Bilby had bought this land from the Western Investment Company, and they had bought it from Toby Kelley, and there being some question about the title, asked me if I would agree to a sale on it, he would bid on it to help fix up his title; he had bought Bilby out and after the land had been sold, and I told him I would do what I could. Q. Who represented you, or filed for you, the petition to sell the real estate? A. Mr. Bearman told me he would have Mr. Righter, * * * Q. At the time Mr. Righter prepared that petition which you have here, did he ever represent you in any other matter? A. No. Q. You say at the instance and request of Jake Bearman, he represented you in this matter? A. Yes, sir. Q. Mr. Murphy, you show by your report in the case of Toby Kelley, you received $1,135, dated October 1, 1912; please state if that is for reporting to the county court the amount you received for the sale of the land as directed by the county court of the Sukie Kelley allotment? A. Yes, that is what was received. Q. That the total amount you received? A. Yes. Q. And from whom did you receive it? A. Jake Bearman. Q. Mr. Murphy, the order confirming the sale and identified as plaintiffs' exhibit 5, shows that the land was sold for $1,935 to Jacob A. Bearman and John S. Bilby, please state the difference between $1,935 and $1,135? A. Jake claimed he paid the trustees of the Western Investment Company $800, and when he first mentioned the sale, wanted to retain what was paid on the land and pay the balance, which agreement was kept. Q. Who was the agreement between? A. Jake and I. Q. You say that part of the consideration between yourself and Jake Bearman, prior to the petition to sell by Righter, that your agreement with Bearman to deduct from the purchase price of the land paid to the probate court, that amount that Bilby and Bearman paid the Western Investment Company $800? A. Yes, sir. Q. In the final settlement between yourself and Bearman and Righter that original agreement carried out as originally agreed on? A. Yes. Q. And the $1,135 was the sum total received by you as guardian through this probate sale? A.

Yes. Q. You paid the attorney fees and court costs of that sale? A. I did. * * * A. The land had been sold, and I considered anything I got, was velvet for Toby."

The trial court found:

"* * * That there was no actual fraud or intention to defraud committed by any of the parties hereto or by F. B. Righter, the attorney, but finds the issues in favor of the plaintiffs and against the defendants to the extent that the court finds that the $800 of the consideration agreed to be paid for the guardian's deed involved in this action was never paid, and that the deed was delivered pursuant to a prior agreement between the guardian and the grantee in said deed, which was made by them subject to the approval of the county court, that $800 of the $1,935 which was the price for which said land was sold and confirmed by the county court, should be retained by the grantees in said deed, and that the county court did approve said agreement; but that said court was without jurisdiction to authorize said sum to be deducted from the purchase price of said land for the reason that said sum constituted no charge against said land, and consequently no charge against the proceeds thereof, and said court had no authority to order same deducted from the purchase price, nor was said guardian, as matter of law, authorized to allow said deduction, and by reason of all of said facts, $800 of said purchase price is still unpaid, and that no rights of innocent purchasers have intervened. * * * The court finds that by reason of the foregoing facts the plaintiffs are entitled to a vendor's lien upon the land described in plaintiffs' petition for the sum of $800 with interest thereon from July 29, 1912, at six per cent. per annum, and to foreclosure thereof."

In McIntosh v. Holtgrave, 79 Okla. 63, 191 Pac. 739, it is laid down that there are three ways by which a domestic judgment may be attacked: (a) Directly in some manner provided by law; (b) collaterally, by incidental proceedings not provided by law; (c) "by an equitable proceeding to set aside such judgment for fraud practiced by the successful party, said fraud inducing, or entering into such order or judgment, where such fraud is extrinsic to the issues in the proceeding attacked, and especially where the court has been imposed upon by such fraud." In Johnson v. Furchtbar et al., 96 Okla. 114, 220 Pac. 612, it is said:

"This proceeding is not one provided by law for attacking judgments, and, hence, is not a direct attack. It is argued by plaintiff, however, that there are sufficient allegations of fraud in the petition to constitute this an equitable proceeding to set aside a judgment for fraud, and can, therefore, be maintained for that reason. In the above case and in numerous other cases, this court has recognized equitable proceed-

ings to vacate judgments procured through fraud and in several cases such attacks have been denominated direct attacks, and we think it may be conceded that such a proceeding is recognized by this court as a direct attack."

Under said rules, the averments aforesaid were sufficient to give a court of equity jurisdiction to set aside the sale for extrinsic fraud.

3. Said evidence does not sustain all the allegations, but does prove that there was secret agreement between said guardian on the one hand, and Bearman and Bilby, that they should pay $800 less than the bid. Said evidence conclusively shows that, in fact, the land did not sell for 90 per cent. of its appraised value. Equity looks to substance —not to form. Because the return showed, the decree of confirmation found, and the guardian's deed recited, that the land sold for $1,935, ninety per cent. of the appraised value, the proceedings and the deed were not void. Johnson v. James et al., 101 Okla. 140, 223 Pac. 843. This action would fail as being a collateral attack upon the judgment of the county court, were it not for the allegations and proof of extrinsic fraud, to wit, said secret agreement. It was fraud for the guardian to represent to the court that the sale had been made for the full amount of the cash bid. Bearman and Bilby, the purchasers, had participated therein. Defendants pleaded that the full amount of the bid was paid and that all proceedings were regular, denying the matters alleged and proven as to nonpayment of the $800. They did not allege the $800 as a part payment of the bill. Nor did they allege that the plaintiffs, as heirs of Toby Kelley, were liable on any former void conveyance from Toby to Western Investment Company, or for moneys received by him thereon. Bearman and Bilby had paid the said $800 to the Western Investment Company, bankrupt—not to plaintiffs or their ancestor, Toby Kelley—for a title that is conceded to have been spurious and void. When they sold the land to defendant. Lytle, they had no title whatever. The very purpose of the guardian's sale was that they might acquire title and thereafter convey, as they did, by quitclaim deed, to Lytle. The district court properly found that said guardian, as a matter of law, was not authorized to allow said $800 as a debt or charge against the estate of the ward, and had no authority to order such deduction. The order of the county court for that purpose was, at least, erroneous. That court had been imposed upon by concealment of said secret agreement when confirmation was granted. In allowing the claim, it suffered

further imposition. Said amount could no more be deducted from the bid than any other expenses defendants might have incurred. It was not a charge against the estate of the ward. The said secret agreement was duly carried out, apparently with the consent of the county court. Inasmuch as the order of the county court, authorizing the guardian to pay the $800, in settlement of the threatened litigation over the land, was rendered several months after the ward had parted with all interest in the land, it is obvious that it was made in an effort to give legal sanction to such secret agreement. Not only was 90 per cent. of the proposed bid not paid, but there was no intention or purpose that it should be paid. This is not a case like Johnson v. James, supra, where the sale was attacked because the guardian misapplied the funds of his ward after the sale was consummated and the price paid to the guardian. Such subsequent order of the county court to allow or pay defendants the $800 out of the proceeds of the sale did not affect the essential nature of the transaction. Its very substance was fabricated of an attempt to purchase the land for less than 90 per cent. of its appraised value, and no legal alchemy can convert it into an authorized payment from the ward's estate. In Pyeatt et al. v. Estus et al., 72 Okla. 160, 179 Pac. 42, the facts showed that the ward's lands were ordered sold for cash; that they were purchased at the guardian's sale by M. for himself and two associates for $26,000 to be paid in cash; that before conveyances were made, the purchasers sold the lands to E. for $48,000; that the guardian was paid $15,000 in cash and there was conveyed to him real property valued at $28,000; that the purchasers colluded with the guardian for the purpose of securing title to the lands in the manner stated. It was held that such facts rendered the conveyances from the guardian void. There was, however, part payment to the guardian. In Langley v. Ford et al., 68 Okla. 83, 171 Pac. 471, paragraph four of the syllabus is:

"Where a guardian sells the lands of his ward on a secret understanding that the purchaser will not pay for same, and the sale is confirmed by the court and deed executed and delivered to the purchaser, such facts constitute a fraud upon the estate of the ward, and the sale may be set aside in an action by the ward against the purchaser or any other person who acquires rights in said lands with knowledge or notice of such secret fraud."

Mr. Justice Owen, in Berry v. Tolleson et ux., 68 Okla. 158, 172 Pac. 630, where the guardian had sought by secret understanding to receive other property for his ward's lands, said:

"This was exactly the sort of sale required by the statute, so far as the records disclose. In a proper action brought by the minors against the purchaser, this sale would have been held void for the reason that he was a party to the fraud, not for the reason that the estate did not benefit by the sale."

A secret agreement to pay only a part of the purchase price would have the same effect as a secret agreement to pay none thereof. The secret agreement preceding the sale in the county court was pleaded by plaintiffs in this case in the district court, was proved, and was found by the court as shown hereinabove. It is noted that the trial court found that there was no actual fraud, or intention to defraud, committed by any of the parties hereto. The court should have found that there was so-called constructive fraud as defined in 2 Pomeroy, sec. 922 (3rd Ed.):

"The term 'constructive fraud' is not a very appropriate one, but has been used so long that any attempt to substitute another in its place would be useless. It is important, however, to form an accurate notion of the meaning given to it in equity, and of the peculiar element or criterion which distinguishes the various classes of cases belonging to it. The distinguishing element of actual fraud, as has been shown, is always untruth between the two parties to the transaction, so that actual fraud may be reduced to misrepresentations and concealments. The untruth at law must be virtually intentional—a falsehood; in equity the intention is not so essential. Untruth is not the distinguishing element of constructive fraud; it is never essential that there should be untruth between the immediate parties to a transaction, in order that it may come within the denomination of constructive fraud; in a great many instances it would be impossible to predicate untruth of the wrongdoer's conduct. Constructive fraud is simply a term applied to a great variety of transactions, having little resemblance either in form or in nature, which equity regards as wrongful; to which it attributes the same or similar effects as those which follow from actual fraud, and for which it gives the same or similar relief as that granted in cases of real fraud. It covers different grades of wrong. It embraces contracts illegal, and therefore void at law as well as in equity; transactions voidable in equity because contrary to public policy, and transactions which merely raise a presumption of wrong, and throw upon the party benefited the burden of proving his innocence in the absence of fault."

In numerous cases, this court has, in ef-

fect, recognized the distinction between actual and constructive fraud in such cases. See Allison v. Crummey et al., 64 Okla. 20, 166 Pac. 691; Tootle v. Payne, 82 Okla. 178, 199 Pac. 201.

3. The plaintiffs in error have pleaded the statute of limitations. So far as Toby Kelley is concerned, it is plain that his interest in the land in question could be divested only in the manner authorized by federal statute, to wit, by a sale through the probate court. Having failed to obtain title in this manner, the purchasers could not obtain title by invoking, the statute of limitations. The five years' statute of limitations against recovery of lands sold at judicial sale, saving to minors three years after removal of disability, does not apply to actions commenced by restricted Indians for the recovery of their restricted lands. Mills' Oklahoma Indian Land Laws, sec. 338, citing Patterson et al. v. Carter, 83 Okla. 70, 200 Pac 855, and other cases. As to the heirs, the defendants in error, this case having been begun less than five years after Toby's death, the five years' statute of limitations had not run.

4. The court properly found that no rights of innocent purchasers had intervened. The original warranty deed from Bearman and Bilby to Lytle conveyed no title. Lytle paid the $4,000 to Bearman and Bilby, relying on the warranty deed. Of course he had no actual knowledge of said secret agreement because it had not been made. If he had parted with the consideration and made the purchase, relying upon the record of the guardianship sale—fair as it is upon its face—and had no other notice of the fraud, he would be protected as an innocent purchaser. He parted with nothing in exchange for the quitclaim deed from Bearman and Bilby after the guardianship sale. Defendants (plaintiffs in error) are denied relief on their appeal. The cross-appeal of plaintiffs (defendants in error) is sustained. The judgment is reversed and the cause remanded with directions to reenter judgment for plaintiffs for cancellation of said guardian's deed and proceedings, quieting title to, and awarding possession of, the lands in controversy, in plaintiffs; and for further proceedings to determine and award plaintiffs rental value of the lands during the time they have been deprived thereof; and awarding to defendant Lytle a judgment over against his co-defendants for breach of warranty of title contained in his deed in the sum of $4,000, and interest, and any further proper items or amounts; and for further proceedings in accordance herewith.

By the Court: It is so ordered.

Note.—See under (1) 31 C. J. p. 513 (1926 Anno); (2, 3) 28 C. J. p. 1195; (4) 31 C. J. p. 484.